UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | 2:14-cr-00296 |
| : | |
| EPHRAIM RAMSEY : | |

**O P I N I O N**

**Defendant's Motion for Compassionate Release, ECF No. 151—DENIED**

**Joseph F. Leeson, Jr.**                                                              **February 11, 2021**
**United States District Judge**

## I.      INTRODUCTION

Defendant Ephraim Ramsey has served approximately 66 months of a term of 156 months' imprisonment for his guilty plea to one count of conspiracy to distribute five kilograms or more of cocaine, and one count of possession with intent to distribute 500 grams or more of cocaine. Ramsey now moves this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), based on the risk posed to him by the ongoing COVID-19 pandemic. Ramsey's motion points primarily to his history as a smoker, as well as the fact that he suffers from hypertension. The Government opposes Ramsey's motion. For the reasons set forth below, Ramsey's motion for compassionate release is denied.

## II.     BACKGROUND

### A.    Ramsey's charges, plea, and sentence

In 2014, Ramsey came to the attention of the United States Drug Enforcement Agency ("DEA") as an individual engaged in potential cocaine trafficking. *See* ECF No. 123. Specifically, a wiretap and a confidential informant suggested that Ramsey had been traveling on

a monthly basis from Philadelphia, Pennsylvania, to Rochester, New York, to provide a person there with large quantities of cocaine. *See id.* On February 21, 2014, a Philadelphia DEA agent observed Ramsey leaving a residence with two bags; Ramsey placed the two bags in his vehicle and drove away. *See id.* Thereafter, a Trooper with the Pennsylvania State Police, whose assistance had been enlisted at the request of the DEA, captured Ramsey speeding and stopped his vehicle for that violation. *See id.* At the end of the encounter, Ramsey signed a written consent to the search his vehicle, and law enforcement found approximately 3.8 kilograms of cocaine in the vehicle. *See id.*

On January 13, 2016, a grand jury in this district returned the operative indictment[1] in this matter, which charged Ramsey with one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). *See* ECF No. 82. In an Opinion and Order issued on March 7, 2017, this Court denied a motion by Ramsey to suppress the evidence found in his vehicle. *See* ECF Nos. 123-24. On June 7, 2017, Ramsey pleaded guilty to both counts of the operative indictment. *See* ECF No. 131. On November 15, 2017, this Court sentenced Ramsey to a total of 156 months' imprisonment, 5 years' supervised release, a $1,800 fine, and a $200 special assessment. *See* ECF No. 139.

**B.     Ramsey's motion for compassionate release**

In his motion for compassionate release, Ramsey cites the health risks posed to him by the ongoing COVID-19 pandemic in light of his being "a 46 year old smoker of 30 years who

---

[1]     The initial indictment was filed on June 11, 2014, and unsealed on June 11, 2014. *See* ECF Nos. 1, 4-5. The case was initially assigned to the Honorable L. Felipe Restrepo. *See* ECF No. 84.

suffers from poorly controlled hypertension." Ramsey's Motion for Compassionate Release ("Ramsey Mot."), ECF No. 151, at 1. Ramsey states that he "is currently incarcerated at [FCI] Fort Dix, the most highly infected institution in the Federal Prison System." *Id.*

Ramsey first states that he has satisfied the relevant exhaustion prerequisites as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). *See* Ramsey Mot. at 2. Ramsey then makes three arguments for the existence of "extraordinary and compelling reasons" for his compassionate release from prison: (1) the response of the Federal Bureau of Prisons to the COVID-19 pandemic generally; (2) how the pandemic is affecting the Fort Dix facility specifically; and (3) Ramsey's vulnerability to serious illness as a result of his chronic medical conditions. *See id.* at 3.

As to his first argument, Ramsey cites a number of news sources and government websites regarding federal inmate infection and death rates. *See* Ramsey Mot. at 3-4. He states that "[a]s of December 4, 2020, the [Bureau of Prisons] has reported 149 inmate deaths and two staff deaths . . . as well as 5,002 positive cases among inmates and 1,564 staff." *Id.* at 3. Ramsey goes on to claim that "COVID-19 is tearing through the [Bureau of Prisons] facilities like wildfire," and that "[i]t has been reported that incarcerated individuals are being infected at a rate more than 6.5 times higher than" the general population. *Id.*

As to his second argument, Ramsey states that he is "currently housed in an open-air dormitory containing 86 men cramped in 104 bunks," and because of "the lockdown policies," he "spend[s] an average of 18 hours a day restricted to that dormitory . . . less than 6 feet away (the CDC's minimum for 'social distancing') from 5 other men." Ramsey Mot. at 4. Ramsey goes on to cite purported statistics regarding infection rates at Fort Dix in particular—an alleged 25% positive infection rate as of April 2020, with 103 positive inmates and 33 positive staff as of December 4, 2020, a large increase from several weeks prior. *See id.* He also criticizes the lack

of (and inconsistency of) testing at the facility. *See id.* Finally, Ramsey points to a number of news sources and judicial opinions which contain criticism of Fort Dix's response to the COVID-19 pandemic. *See id*. at 4-8.

As to his third argument, Ramsey points to what he claims is Centers for Disease Control ("CDC") guidance as to what medical conditions lead to increased risks of serious health consequences from COVID-19 infection. *See* Ramsey Mot. at 8. Specifically, he claims that he suffers from hypertension, has a family history of heart failure, and a 30-year history as a smoker, each of which the CDC has identified puts individuals at increased risk of serious illness as a result of COVID-19. *See id.*

Ramsey additionally argues that the policy guidelines as set forth in the United States Sentencing Guidelines ("U.S.S.G."), his personal characteristics, as well as the factors set forth in 18 U.S.C. § 3553(a), support his motion for compassionate release. Regarding the U.S.S.G., Ramsey argues that U.S.S.G. § 1B1.13 does not apply to limit a court's discretion in granting compassionate release where such a motion was not made by the Director of the Bureau of Prisons, and that this conclusion is supported by recent case law. *See* Ramsey Mot. at 9-10. Regarding his personal characteristics, Ramsey contends that he has not suffered a single disciplinary infraction during his incarceration and in essence has shown that he has been rehabilitated. *See id*. at 10-11. Finally, Ramsey contends that the factors set forth in § 3553(a) weigh in favor of his compassionate release, and points to a number of cases that he claims support his position. *See id*. at 11-15.

### C.     The Government's opposition

The Government contends that it "does not oppose compassionate release based on the current status of an institution in mitigating the spread of the virus." Government's

Memorandum in Opposition ("Government Opp'n."), ECF No. 155, at 6. However, the Government states that its "action plan" has been successful in mitigating the spread of COVID-19 at many institutions. *Id.* at 6-7. With regard to FCI Fort Dix in particular, the Government outlines the history of COVID-19 at the facility. The Government states that there was an initial outbreak in May 2020 "in which 36 inmates at the camp that is part of the institution tested positive for COVID-19. All recovered, and there was no death at the facility." *Id.* at 8. Then, an outbreak beginning in October 2020 affected "more than half of the institution;" however, the Government states that "[t]he institution has hopefully turned the corner in recent days, as the number of positive cases has dropped significantly. At present, there are 71 reported cases in the institution, and a total of 1,423 current inmates are deemed recovered." *Id.* The Government does observe that there has been one COVID-related death at the facility: "[O]n January 22, 2021, a 58-year-old inmate, who had long-term, preexisting medical conditions which the CDC lists as risk factors for developing more severe COVID-19 disease, succumbed to the illness." *Id.* at 8-9.

Regarding Ramsey's medical conditions and whether they warrant his compassionate release under applicable law, the Government states that Ramsey "presents no details regarding his tobacco usage other than he was a smoker for 30 years," and "[t]here is also no reference in his [Bureau of Prisons] medical records regarding smoking." Government Opp'n. at 15. What is more, Ramsey "has been in custody since December 12, 2017, and smoking has been banned in all federal prison facilities since 2006. It is well established that the health risks presented by smoking drop dramatically once a user quits and years pass." *Id.* The Government also states that Ramsey "presents none of the serious ailments associated with smoking, such as cancer or pulmonary problems." *Id.* The Government therefore "submits that his possible status as a

smoker many years ago does not outweigh the other 3553(a) factors militating against release." *Id*. at 16.

As to Ramsey's hypertension, the Government states that "[i]n the CDC's latest assessment of risk factors that place a person at a greater risk of a severe outcome from COVID-19, hypertension is listed as a condition that 'might' cause a serious outcome; the CDC states there are insufficient data to draw a conclusion." Government Opp'n. at 16. It then points to a number of courts that have denied motions for compassionate release where hypertension is the only risk factor to the movant. *Id.*

The Government also argues that the risk factors posed by smoking and hypertension together do not outweigh the factors set forth in 18 U.S.C. § 3553(a) as applied to Ramsey. *See* Government Opp'n. at 18. According to the Government, "[a]t present, the defendant's medical conditions are appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and also acts to treat any inmate who does contract COVID-19." *Id*. at 19. "Moreover," the Government avers, Ramsey "continues to present a danger to the community, and should be required to serve the sentence that this Court imposed for his criminal conduct." *Id.* In particular, the Government points to the nature of his offense: trafficking a large amount of cocaine; the Government also points to the fact that Ramsey's was not an offense of a misguided youth, as he committed the offense when he was in his late 30's. *Id*. Additionally the Government points to Ramsey's lengthy criminal record—including for drug distribution and firearms possession—which the Government states "often occurred while he was on parole or supervised release." *Id.*

**III.    LEGAL STANDARD**

The First Step Act empowers criminal defendants to request compassionate release with the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).[2] This section dictates that the defendant must first move for compassionate release with the BOP, which then has thirty days to consider the request. *See United States v. Raia*, 954 F.3d 594, 595-97 (3d Cir. 2020) (holding that the risk COVID-19 poses in the federal prison system does not excuse the exhaustion requirement).

Once a defendant satisfies the exhaustion requirement,[3] a court may reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). *See also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

Section 1B1.13 of the United States Sentencing Guidelines in turn provides the relevant "policy statements." Under U.S.S.G. § 1B1.13, a court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and

---

[2]    Section 3582(c) is actually part of the Sentencing Reform Act of 1984, but was amended by the First Step Act to provide prisoners a more direct route to court for relief. *See United States v. Torres*, No. 18-414, 2020 WL 3498156, at *6 (E.D. Pa. June 29, 2020).
[3]    The Court has already found that Ramsey has satisfied his obligation to exhaust his administrative remedies, and as such does not address this point further. *See* ECF No. 154. Nor does the Government challenge this conclusion. *See* Government Opp'n. at 4.

compelling reasons warrant the reduction; . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [ ] the reduction is consistent with this policy statement." The Sentencing Commission has advised that the medical condition of a defendant satisfies the "extraordinary and compelling" standard if, in relevant part:

> (i)  The defendant is suffering from a terminal illness . . . . [Or]
>
> (ii) The defendant is—
>
> > (I)   suffering from a serious physical or medical condition,
> >
> > (II)  suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.*, App. Note 1.

## IV. DISCUSSION

### A. Ramsey's medical conditions do not present an extraordinary and compelling reason for a reduction in his sentence.

It is undisputed that Ramsey is 46 years old and suffers from hypertension, hyperlipidemia (a high concentration of fats or lipids),[4] and a long-standing history of tobacco use.[5]  *See* ECF No. 156.  However, in the Court's view, these conditions do not present an "extraordinary and compelling" reason for Ramsey's early release from incarceration in light of the current COVID-19 conditions at SCI Fort Dix.  In particular, a review of Ramsey's medical

---

[4]     Ramsey does not appear to rely in any way on this medical condition in support of his motion.  The Court therefore declines to address it.
[5]     The Court assumes this to be true for purposes of Ramsey's motion despite the lack of any evidence supporting Ramsey's long-standing tobacco use.

records, which were obtained by the Government and submitted with its opposition, does not indicate the presence of any complications or emergent medical concerns as a result of his conditions.[6]  He appears to be taking several medications for his hypertension and receiving counseling in connection with those medications.  *See* ECF No. 156 at 6-7.  On the whole, it appears Ramsey's several conditions have been adequately managed during his incarceration, he is able to partake in normal activities of daily life, and most importantly, he is able to provide self-care.[7]  These observations weigh against a finding that Ramsey's medical conditions present extraordinary and compelling reasons for a reduction of his sentence.  *See United States v. Wells*, No. CR 08-68, 2020 WL 7612422, at *2 (W.D. Pa. Dec. 22, 2020) ("Defendant has not sufficiently demonstrated that the Court should exercise its discretion to grant him compassionate release based on his medical ailments, which appear to be controlled with adequate treatment, the general risks posed by the COVID-19 pandemic and the spread of COVID-19 at the institution where he is housed."); *United States v. Williams*, No. CR 18-335, 2020 WL 4934659, at *4 (W.D. Pa. Aug. 24, 2020) ("[T]he record before the Court shows that Defendant's asthma is treatable with medication and the BOP is providing him access to appropriate medical care. As such, there is nothing to suggest that Defendant's asthma prevents him from being able 'to provide self-care within the environment of a correctional facility,' such that release is warranted."); *United States v. Pangelinan*, No. CR 17-483, 2020 WL 3892961, at *2 (E.D. Pa. July 9, 2020) ("Looking to whether Pangelinan's condition in conjunction with the

---

[6]      His medical records do indicate that Ramsey has suffered or does suffer from right-knee pain, for which he was prescribed medication.  However, this condition is not related to his hypertension or history of tobacco use, and the Court does not address it further.
[7]      *See, e.g.*, ECF No. 156 at 35 (Doctor's note indicating that as of December 5, 2019, Ramsey was in compliance with his medication regiments, had suffered no adverse reactions to his medications, and beyond hyperlipidemia, had "no other cardiac risk factors").

COVID-19 crisis presents an extraordinary and compelling circumstance, Pangelinan has presented no evidence that his conditions are not being appropriately managed by the prison, much less that his conditions 'substantially diminish[ ]' his ability to 'provide self-care.' *See* U.S.S.G. § 1B1.13 n.1. In fact, medical records indicate that Pangelinan is receiving medication for his high blood pressure . . . .").

Additionally, the Court credits the Government's contention that, according to the CDC, the risks presented by smoking decrease dramatically once an individual ceases to smoke. *See* Government Opp'n. at 15 n.6. What is more, smoking has been prohibited in all federal correctional facilities since Ramsey has been incarcerated. *See id.* at 15. Finally, there is no evidence of any secondary conditions caused by Ramsey's history as a smoker. *See id.* at 15. Therefore, without more, Ramsey's history of tobacco use—even in combination with his hypertension, which again, is being adequately managed and does not appear to affect Ramsey's activities of daily life or ability to provide self-care—does not present an extraordinary and compelling reason to reduce his sentence. *See United States v. Torres*, No. CR 10-104-2, 2020 WL 5944278, at *5 (E.D. Pa. Oct. 7, 2020) (denying motion for compassionate release based on defendant's alleged history as a smoker); *United States v. Buckman*, 2020 WL 4201509 (E.D. Pa July 22, 2020) (denying release where there was no evidence of a compromised immune system in 41-year old defendant with a smoking habit); *United States v. Mathe*, No. CR 14-528, 2020 WL 3542177, at *5 (E.D. Pa. June 30, 2020) ("A history of smoking without a secondary diagnosis, such as COPD, is not recognized as a risk factor for worse outcomes from COVID-19 by the CDC. . . . What is more, forty-eight years old does not put Mr. Mathe in the sixty-five-plus high-risk category.").

Finally, the Court takes note that although SCI Fort Dix has suffered severe outbreaks of COVID-19 over the past year, at the time of the filing of the Government's opposition, there were 71 reported cases at the institution, which houses 2,723 inmates. *See* Government Opp'n. at 8. Since the last significant outbreak at the facility, which began in October, 1,423 current inmates have been deemed recovered, and one inmate has died. *See id.* The Court cannot say that the conditions relative to COVID-19 at SCI Fort Dix are, at present, so severe as to present an extraordinary and compelling reason to reduce Ramsey's sentence in light of his medical conditions.[8] *Cf. United States v. Mitchell*, No. CR 08-007, 2020 WL 7181118, at *7 (E.D. Pa. Dec. 7, 2020) ("Even though a defendant may face a greater risk of contracting COVID-19 at a particular prison location, the increasing cases arising daily outside of the prison must be considered and offset this concern.").

For all of the above reasons, the Court does not find that Ramsey's medical conditions present an extraordinary and compelling reason to reduce his sentence.

> **B.** **A reduction in Ramsey's sentence would not be consistent with the Sentencing Commission's applicable policy statement because he presents a danger to the community if released.**

Even if the Court determined that, in the context of the COVID-related conditions at FCI Fort Dix, Ramsey's medical conditions presented an "extraordinary and compelling" reason for his release under U.S.S.G. § 1B1.13, such a finding would not outweigh another element that the sentencing guidelines require the Court to consider: whether Ramsey is a danger to the safety of the community. *United States v. Williams*, No. CR 15-471-3, 2020 WL 4756743, at *4 (E.D. Pa.

---

[8] *But see United States v. Johnson*, No. CR 2:08-374, 2021 WL 409830, at *9 (W.D. Pa. Feb. 5, 2021) ("The court concludes that although active cases among inmates are lower now (71, at most recent count) there is an actual, non-speculative risk that Johnson will be exposed to COVID-19 at FCI Fort Dix.").

Aug. 17, 2020) ("[T]he policy statement additionally requires a court to find that a defendant is 'not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" (quoting U.S.S.G. § 1B1.13(2))).

Ramsey's criminal history prior to the offense for which he is currently incarcerated is as follows:

- a 1995 conviction in the U.S. District Court for the Middle District of Pennsylvania for possession with intent to distribute a controlled substance, for which Ramsey was sentenced to 24 months' imprisonment, *see* Pre-Sentence Report ("PSR") ¶ 37;

- a 2000 conviction in the Lackawanna County Court of Common Pleas for use/possession of drug paraphernalia, for which Ramsey was sentenced to pay a monetary fine, *see* PSR ¶ 38;

- a 2003 conviction in the Chester County Court of Common Pleas for possession of a firearm by a prohibited person, for which Ramsey was sentenced to 364-729 days' imprisonment, *see* PSR ¶ 39;

- a 2012 conviction in the Philadelphia County Municipal Court for DUI, for which Ramsey received six months' probation and other penalties, *see* PSR ¶ 40; and

- a 2012 conviction in the Philadelphia County Municipal Court for DUI, for which Ramsey received 48 hours to 6 months' imprisonment and other penalties, *see* PSR ¶ 41.

From the fact that Ramsey committed two drug-related offenses and one firearm offense prior to his conviction for serious drug offenses in the instant case, the Court cannot say with any certainty that Ramsey will not engage in similar criminal behavior if his sentenced is reduced

and he is released.[9] *See United States v. Ramos*, No. 5:15-CR-272, 2020 WL 6193915, at *5 (E.D. Pa. Oct. 20, 2020) ("Ramos has been committing crimes almost his entire adult life, has not been deterred by prior terms of incarceration, and therefore poses a danger if released."); *United States v. Brinson*, No. CR 15-87, 2020 WL 4736258, at *5 (W.D. Pa. Aug. 14, 2020) ("As this Court has repeatedly observed, heroin trafficking poses a substantial risk of harm to the community. What's more, Defendant not only engaged in heroin trafficking, but also possessed firearms, thus creating the potential for additional danger to the community. . . . Defendant now broadly asserts that he is not a danger to the community. His criminal conduct in this case, along with his significant criminal history involving both gun and drug offenses, strongly suggest otherwise." (internal citations omitted)).

Because the Court cannot say with confidence that if released, Ramsey will not engage in conduct similar to that in which he has engaged in the past, he is ineligible for a reduction of his sentence under U.S.S.G. § 1B1.13.

### C. The factors set forth in 18 U.S.C. § 3553(a) do not support a reduction in Ramsey's sentence.

Finally, the Court finds that the factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of a reduction in Ramsey's sentence. In particular, § 3553(a)(2) requires a court to consider, among other things, the following factors: "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to

---

[9] The Court also takes note of the fact that the conduct for which Ramsey was charged in this case was only one act in a long-running conspiracy. As indicated in Ramsey's PSR, from 2010-2014, he was engaged in a conspiracy to traffic cocaine to Rochester, New York; over the course of the conspiracy, Ramsey and his co-conspirators distributed over 50 kilograms of cocaine. *See* PSR ¶ 12.

protect the public from further crimes of the defendant." Ramsey has served 66 months of a 156-month sentence for serious drug offenses. In the Court's view, reducing Ramsey's sentence at this time would be inconsistent with the factors set forth in § 3553(a)(2). Specifically, such a reduction would not "reflect the seriousness of [his] offense," would not "promote respect for the law," would not "provide just punishment for [his] offense," would not "afford adequate deterrence to criminal conduct," and would not "protect the public from further crimes." *See United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (finding consideration of the amount of time remaining on a defendant's sentence is appropriately considered in the context of § 3553(a)(2) factors).

Additionally, § 3553(a)(1) requires a court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Here, as the Court has already determined, the conduct for which Ramsey is currently incarcerated was not an isolated incident; rather, it was part of an ongoing conspiracy that occurred between 2010 and 2014. Even before this time period, Ramsey was convicted of two-drug related charges and a firearms charge. In light of his history of criminal conduct, the Court does not find that the factor set forth in § 3553(a)(1) weigh in favor of a reduction of Ramsey's sentence.

Therefore, for the additional reason that the factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of a sentence reduction, Ramsey's motion for compassionate release will be denied.

V.   **CONCLUSION**

For the reasons set forth above, Ramsey's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge